## JOHN P. HICKMAN *v.* STATE OF MARYLAND

[No. 3, Initial Term, 1967.]

*Decided August 3, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Russell J. White* for appellant.

*Carville M. Downes, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Bernard L. Silbert, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John P. Hickman, the appellant, complains of a conviction for burglary in a trial before the court, without a jury, in the Criminal Court of Baltimore because (1) his premises were illegally searched and the fruits of the burglary were introduced into evidence over his objection and (2) that the evidence, consisting of the possession of recently stolen goods, was insufficient to convict him of the crime of burglary.

The dwelling of Helen Ziolkowski was burglarized on the night of December 27, 1963. Among the items missing were a roast, two pairs of curtains and various coins. The curtains and some of the coins, found in Hickman's apartment, were identified as having been taken in the burglary.

Sergeant Einolf, of the Baltimore City Police, to justify the search and seizure of the curtains and coins, testified that when he reported for work at 4:00 P.M. on December 29, 1963, he was advised that there was a complaint of a breaking and entering and larceny at Doc's Chuck Wagon, and that goods of the value of more than one hundred dollars were taken therefrom. That crime is involved in this appeal only insofar as it may justify the search hereinafter described. Later that evening he met one Gloria Lyons at Hawkins Point Road and Quarantine Road in the Curtis Bay area and received from her information that she was living with Hickman at 153 N. Patterson Park Avenue, but she had had an argument with him that night, and he had pushed her out of the car at point where she was talking with the officer. She further told him that Stack, a co-defendant, and the appellant had broken into Doc's Chuck Wagon the day before, and that she had been given three cartons of Salem cigarettes from the fruits of the crime. She stated

further that there was still a large quantity of cigarettes and some coins from Doc's Chuck Wagon back at the apartment. She later signed a consent for a search of Hickman's apartment. About 11:00 P.M. Sergeant Einolf accompanied her to the apartment where he helped her move her clothing out of the apartment. While he was at the apartment, Sergeant Einolf seized two pairs of new white curtains on a chair in the bedroom and various coins. The curtains and coins were later identified as being the property of Mrs. Ziolkowski. No warrant either for the search or for an arrest had been issued prior to the search.

Charles Stack, a co-defendant, as witness for the State, testified that he was staying with Hickman at his apartment during the time these events took place. He further testified that he, Stack, had committed the breaking and entering of Doc's Chuck Wagon and had given one of the items he had stolen to Hickman. There was no testimony as to how the goods stolen from Helen Ziolkowski's home got into Hickman's apartment. The coins and curtains were introduced into evidence over objection.

Hickman concedes the validity of the presumption that one in possession of stolen goods mut give a reasonable explanation or face the inference that he is the thief, but contends that the evidence did not show that he had exclusive possession of the stolen goods. It is clear that the apartment was occupied by three persons. Gloria Lyons did not testify. Her statements to the police being hearsay, could be received into evidence only to justify the search. Charles Stack did testify. He admitted the Doc's Chuck Wagon larceny. He further stated that a razor stolen in that crime was given to Hickman. Based on this testimony, Hickman was convicted of receiving stolen goods from which conviction no appeal was taken. Stack was not questioned concerning the Ziolkowski burglary and gave no evidence concerning the curtains or coins.

The exclusiveness rule was explained in *Butz v. State,* 221 Md. 68, 156 A. 2d 423, 428:

> "We shall not labor the appellant's claim that his possession was not 'exclusive.' It assumes that the only testimony in that regard was that the articles were

seen in an apartment occupied by him and Mrs. Curry; but this disregards entirely the testimony of Mrs. Curry, which the trial court was at liberty to believe, to the effect that Butz gave certain of the articles to her. There can be no doubt that where it is shown that the possession was personal and involved a distinct and conscious assertion of possession by the exercise of complete dominion and right of disposal by the defenfendant, it is 'exclusive' within the rule."

Compare *Anglin v. State,* 1 Md. App. 85, 227 A. 2d 364.

On the basis of the record before us, we hold that the State failed to establish that appellant's possession of the stolen goods was exclusive within the principles of law enunciated in *Butz* and *Anglin.*

We do not reach, and do not decide, the legality of the search and seizure.

> *Judgment reversed and case remanded for a new trial.*